**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD J. KOELLER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-00641 |
| OX APPSEC SECURITY INC., | ) ) ) | |
| Defendant. | ) ) | |

**OX APPSEC SECURITY INC.'S**
**MOTION TO DISMISS AND MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS**

Plaintiff Edward J. Koeller's ("Plaintiff's") claim that Ox AppSec Security Inc. ("Ox") called his cellular telephone does not state a claim on which relief may be granted, because the statute under which he seeks relief does not apply to such calls. The plain language of the Telephone Consumer Protection Act ("TCPA") makes clear that the prohibition against calling numbers listed on the National Do Not Call Registry ("NDNCR") only applies to numbers of "residential subscribers," and that the term "residential subscribers" does not include cellular telephone subscribers. Although the FCC has attempted to expand the TCPA to include such numbers, in the wake of the Supreme Court's recent decisions in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court cannot simply accept the FCC's interpretation. Therefore, Plaintiff has not plausibly alleged a violation of Section 227(c) of the TCPA. Nor has he plausibly alleged a claim for treble damages under Section 227(c)(5) of the TCPA.

Accordingly, Plaintiff's "Class Action Complaint" ("Complaint") should be dismissed in its entirety or, at a minimum, to the extent that it seeks treble damages.

## FACTUAL AND PROCEDURAL BACKGROUND

In his Complaint, Plaintiff alleges Ox violated Section 227(c) of the TCPA by "making telemarking calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls." (ECF 1 ¶ 3). As to himself, Plaintiff alleges that he received calls from Ox on his cellular telephone number, (314) 602-XXXX, and that it is "a non-commercial telephone number not associated with any business" that is "used for personal residential purposes." (*Id.* at ¶¶ 14-15). Plaintiff further alleges that his cellular telephone number has been listed on the National Do Not Call Registry since "August of 2007," and that it has also been on the Missouri No-Call List since January 1, 2013. (*Id.* at ¶¶ 16-17).

Plaintiff alleges that, in spite of this, he received two calls from Ox, on March 6 and March 28, 2025, in which a representative of Ox "sought to solicit the Plaintiff to purchase its cybersecurity products." (*Id.* at ¶¶ 19, 23). Plaintiff claims he informed the representative he spoke to on the first call that "they were calling a personal number . . .." (*Id.* at ¶ 24). Plaintiff also alleges Ox "provides services to assist application security teams address vulnerabilities, which it offers for sale." (*Id.* at ¶ 27).

## APPLICABLE LEGAL STANDARDS

"A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Morton Cry.*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009)). To be facially plausible, a plaintiff must plead "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A "formulaic recitation of the elements" of a claim is insufficient to satisfy this requirement. *Ashcroft v. Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    PLAINTIFF CANNOT PLAUSIBLY ALLEGE A TCPA CLAIM BECAUSE HE ALLEGES HE RECEIVED THE CALLS ON HIS CELLULAR PHONE, WHICH IS OUTSIDE THE SCOPE OF SECTION 227(C)(5)**

For Plaintiff's Complaint to survive Ox's motion to dismiss, he must plausibly allege that he is a "residential subscriber" who received two or more telephone calls in a 12-month period in violation of the regulations promulgated by the Federal Communications Commission ("FCC") pursuant to the TCPA. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). Plaintiff has not done so here, and cannot do so, because the only alleged calls at issue were calls to his cellular telephone. (*See* ECF 1 ¶¶ 15, 19).

Section 227(c)(1) of the TCPA, titled "Protection of subscriber privacy rights," required the FCC to initiate rulemaking "concerning the need to protect ***residential telephone subscribers'*** privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Section 227(c)(3) further authorized the FCC to "require the establishment and operation of a single national database to compile a list of telephone numbers of ***residential subscribers*** who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase." 47 U.S.C. § 227(c)(3) (emphasis added). Pursuant to that authority, the FCC promulgated regulations governing certain telephone solicitations, in particular 47 CFR § 64.1200(c), which provides "[n]o person or entity shall initiate any telephone solicitation to . . . [a] ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." (emphasis added). Thus,

the TCPA's do-not-call regulations "unambiguously applies only to **residential** telephone subscribers." *Clauss v. Legend Sec., Inc.*, 2014 WL 10007080, at \*2 (S.D. Iowa 2014) (emphasis added). When Congress granted the FCC authority to promulgate regulations under the TCPA to create the NDNCR, it "intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers." *See Turizo v. Subway Franchisee Advert. Fund. Tr. Ltd.*, 603 F.Supp.3d 1334, 1340 (S.D. Fla. 2022).[1]

Plaintiff's interpretation of the statute as authorizing a cause of action for calls received on cellular telephone numbers is inconsistent with the plain language of the TCPA. Proper respect for the legislative powers vested in Congress "implies that statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Neosho R-V Sch. Dist. v. Clark,* 315 F.3d 1022, 1032 (8th Cir. 2003) (citing *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). If the statutory language is clear, the inquiry must end there. *See Missouri v. Trump,* 128 F.4th 979, 991 (8th Cir. 2025).[2]

---

[1]    *Turizo* concluded that the FCC had wrongly interpreted the TCPA and had exceeded its authority to issue do-not-call related regulations that included cellular numbers, but the court there ultimately decided that it was bound to accept the FCC's rules and regulations anyway. 603 F.Supp.3d at 1341-42. As explained below, the Supreme Court has since made clear that courts are not obligated to – and indeed may not – simply defer to such erroneous agency interpretations. *See Loper Bright,* 603 U.S. at 392-93.

[2]    Although it is not necessary or appropriate to resort to the legislative history of the TCPA to reach this conclusion, the TCPA's legislative history is also inconsistent with the FCC's interpretation. Although cellular telephones existed when the TCPA was enacted in 1991, Congress focused its provisions largely on residential landlines. Congress emphasized that the TCPA was intended "to protect the privacy interests of *residential telephone subscribers* by placing restrictions on unsolicited, automated telephone calls *to the home* . . .." Senate Report No. 102-178 (1991) at 1968 (emphasis added). Congress characterized telemarketers "who place telephone calls *to the home*" as "intruders" upon "one's privacy rights *in the home.*" *Id.* at 1976 (emphasis added). Congress also emphasized that the TCPA was not intended to prevent "telemarketers from placing automated calls *to business users.*" *Id.* at 1975 (emphasis added). One of the Senate sponsors of the TCPA described robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to *rip the telephone right out of the wall*." 137 Cong. Rec. 30821 (1991) (emphasis added).

Congress clearly only authorized the FCC to create an NDNCR for residential numbers and to protect the privacy right of residential subscribers to avoid calls to registered numbers. Although cellular phone subscribers have in the past been permitted to add those numbers to the NDNCR, the fact remains that in enacting the statute and amending it over the years, Congress has recognized that residential phone lines are different than cellular phone lines.  For example, the statute includes separate provisions that restricts calls made to cellular phone lines using a prerecorded or artificial voice (*see* 47 U.S.C. § 227(b)(1)(A)(iii)) and those made to residential telephone lines using such technology (*see* § 227(b)(1)(B)). Because Congress knew and intended there to be a difference between cellular telephones and residential telephones—and in fact referenced cellular telephones as distinct from residential telephones throughout the TCPA— the only appropriate conclusion is that Congress intentionally omitted any reference to cellular telephones in section 227(c). *See Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 53, 145 S. Ct. 2058, 2064, 222 L. Ed. 2d 331 (2025) ("That Congress used different language in these two provisions strongly suggests that it meant for them to work differently. After all, when a document uses a term in one place and a materially different term in another…the presumption is that the different term denotes a different idea….") (internal citations omitted).

This is consistent with other decisions finding that the TCPA draws a distinction between calls to residential lines and to cellular numbers.  Even prior to the Supreme Court's decision in *Loper Bright*, a number of courts had applied the fundamental principles of statutory interpretation set forth above to conclude that the TCPA does not authorize a private right of action based upon

---

In contrast, Congress mentioned "cellular users" only in the context of precluding the use of automatic telephone dialing systems to make unsolicited calls to cellular telephones on the basis that those calls "often impose a cost on the called party." *Id.* at 1969.  Congress has amended the TCPA on multiple occasions, but it has chosen not to amend the references to "residential subscribers" or to define "residential" so as to include cellular phones.

calls made to cellular telephones. *See, e.g., Gaker v. Q3M Ins. Solutions,* 2023 WL 2472649, at *3 (W.D.N.C. February 8, 2023); *Cunningham v. Sunshine Consulting Group, LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Morgan v. U.S. XPRESS, Inc.*, 2018 WL 3580775, at *2-*3 (W.D. Va. July 25, 2018); *Cunningham v. Enagic USA, Inc.*, 2017 WL 2719992, at *5-*6 (M.D. Tenn. June 23, 2017); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F.Supp.3d 1187, 1201 (M.D. Tenn. 2017); *see also Turizo*, 603 F.Supp.3d at 1339-41 (holding that the FCC's "assumptions as to congressional intent should not suffice to create an entirely new private right of action for cellular telephone subscribers" and that the FCC's adoption of the "residential" presumption expanded "section 227(c)(5)'s right of action to cellular telephone subscribers – without any congressional grant of authority to do so).[3]

Because Plaintiff alleges that he received calls on his cellular phone, his claims against Ox must be dismissed. This is true without regard to Plaintiff's conclusory allegation that he uses his phone for residential purposes, because a cellular telephone is not a residential telephone. *See,*

---

[3]      While some district courts have reached the opposite conclusion even after *Loper Bright*, such decisions are not well reasoned, and none is binding precedent in this court anyway. *Wilson v. Hard Eight Nutrition LLC,* 2025 WL 1784815 (D. Oregon, June 27, 2025) is typical. There, the district court still deferred to the FCC's interpretation. 2025 WL at * 4 ("[T]he Court must 'afford appropriate respect to the agency's interpretation.'") (quoting *McKesson,* 2025 WL 1716136, at *8). *Wilson* is also illustrative of these courts' faulty reasoning regarding the meaning of the statutory provision. The *Wilson* court simply announced that "residential subscribers" means "users of telephones for non-commercial purposes," based on no authority other than a dictionary's definition of "residential" as something that is "used by a resident or residents." *Id.* at *5 (citing the definition for "residential" in WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY.). Citing no other authority, the court then pronounced that, based on that definition, "residential telephone subscribers" must refer to "individuals… who make regular payments to *use* telephone service at home," which the court then rephrased as "people who use a telephone for a personal or private purpose – a *use* traditionally tied to the home – opposed to a commercial or business use." The court's *ipse dixit* is not persuasive. Nor is the court's citation to the alleged legislative intent behind the TCPA. Given the lack of statutory ambiguity, as noted above, courts are not permitted to delve into legislative intent. But in any event, the court's examination of legislative intent collapses back into its definitional pronouncement above, with the court explaining that "[t]he-do-not-call provision's sole and express aim is 'to protect residential subscribers' privacy rights" and then pronouncing that this must mean that cellular numbers are included. *Id.* at 6.

*e.g., Cunningham v. Lines,* 2016 WL 7494871, *2 (S.D. Fla., Dec. 29, 2016) ("residential land line telephone numbers" are not the same as "cell-phone numbers"); *Rahn v. Bank of Am., N.A.,* 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016) ("The statute clearly differentiates between calls to residential lines and calls to cellular and other types of mobile lines."), *report and recommendation adopted,* 2016 WL 7335392 (N.D. Ga. Sept. 2, 2016); *Iniguez v. The CBE Grp.,* 969 F. Supp. 2d 1241, 1249 (E.D. Cal. 2013) ("[T]he TCPA makes a clear distinction between the provisions that apply to residential lines and those that apply to numbers assigned to a cellular telephone service.").

Plaintiff's citation to the FCC's 2003 rule that purports to allow cellular telephones to be listed on the NDNCR (47 C.F.F. § 64.1200(e)) (the "2003 Rule") does not salvage his claim.  The FCC's erroneous interpretation of the statute is not binding.  *See Loper Bright,* 603 U.S. at 392-93 (holding that courts must interpret statutes and may not simply defer to agency interpretations and stating "[w]hen the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, … fix[ing] the boundaries of [the] delegated authority…") (internal citations omitted); *Dixon v. United States*, 381 U.S. 68, 74 (1965) ("The power of an administrative [agency] to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law … but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.").  Indeed, following *Loper Bright* and *McKesson*, multiple district courts have rejected the FCC's interpretation of the TCPA and used their own judgment to interpret the statute. *See,*

*e.g,. Sayed v. Naturopathica Holistic Health*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (rejecting FCC's 2003 order and holding that text messages are not subject to the TCPA's do not call requirements); *Davis v. CVW Pharmacy, Inc.*, 2025 WL 2491195, at *4 (N.D. Fla. Aug. 26, 2025), *appeal docketed*, No. 25-13358 (11th Cir. Sept. 24, 2025) (same).

## II. EVEN IF CELLULAR PHONES COULD, UNDER SOME CIRCUMSTANCES, BE "RESIDENTIAL," PLAINTIFF'S CELLULAR PHONE IS NOT PRESUMED TO BE "RESIDENTIAL."

Even if the FCC could somehow be deemed to have been acting within its authority to allow certain cellular telephones to be registered on the NDNCR and to prohibit calls to the same, there is no basis for the Court to follow the FCC's instruction to simply presume that all wireless subscribers who add numbers to the NDNCR are ones using their wireless phones for "residential" purposes (which the FCC seems to interpret as simply non-commercial purposes).

In the 2003 Rule, the FCC stated:

Moreover, *we believe it is more consistent with the overall intent of the TCPA* to allow wireless subscribers to benefit from the full range of TCPA protections. *Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls.* 47 U.S.C. 227(b)(1)(A)(iii). In addition, *although Congress expressed concern with residential privacy*, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. *As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."* This presumption is only for the purposes of Section 227 and is not in any way indicative of any attempt to classify or regulate wireless carriers for purposes of other parts of Title II. Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

*See* 68 FR 44144-01 (July 25, 2003) at ¶ 14 (emphasis added).

In the wake of *Loper Bright* and *McKesson*, the Court must exercise its own independent judgment and apply common-law principles of statutory construction to reach its own conclusion

as to whether the TCPA creates a "presumption" that all cellphones listed on the NDNCR are "residential." *See Loper Bright*, 603 U.S. at 398-404, 412. This responsibility applies in civil enforcement proceedings brought pursuant to the TCPA (such as the present case). *See McKesson*, 606 U.S. at 149, 152. For the same reasons discussed above that the Court cannot simply accept the FCC's assertion that some cellular telephone numbers can be listed on the NDNCR and provide the basis for do-not-call liability, the Court can also not simply presume that all cellular numbers submitted to the NDNCR are "residential" cellular numbers (even if such a thing existed).

Plaintiff has not adequately pleaded that his cellular phone is used only for non-commercial purposes. Nor could he, as Plaintiff describes calls related to business matters (and his allegations describe Ox offering services to businesses rather than consumers). *See* ECF 1 ¶ 27 (admitting that Ox "provides services to assist application security teams [to] address vulnerabilities, which it offers for sale.") and ¶¶ 19, 23 (alleging that Ox "sought to solicit the Plaintiff to purchase its cybersecurity products."). Ox respectfully submits that Section 227(c)(5) of the TCPA does not extend a private right of action to any cellular telephone subscriber, but even if it afforded such a right to certain cellular subscribers, Plaintiff would not have alleged a plausible claim that his particular cellular telephone is within the scope of Section 227(c)(5). Plaintiff's Complaint should, therefore, be dismissed.

## III.   PLAINTIFF'S TREBLE-DAMAGES CLAIM SHOULD BE DISMISSED

In the event the Court does not dismiss Plaintiff's Complaint in its entirety, the Court should still dismiss Plaintiff's claim for treble damages. Although the TCPA allows a Court to award treble statutory damages *if* there is proof of "willful" or "knowing" violations of its do-not-call restrictions, a plaintiff seeking such damages must still plausibly allege facts sufficient to support such an award in order to survive a motion to dismiss. Plaintiff has not done so here.

Plaintiff alleges he received two, and only two, calls in violation of the TCPA's do-not-call restrictions. (ECF 1 at ¶ 19). Plaintiff then alleges that "[t]hese violations were willful or knowing." (ECF 1 at ¶ 40). He alleges no facts to support this conclusory allegation. In particular, he does not allege that he ever told Ox that his number was on the Do-Not-Call registry – instead, he merely alleges that he told the first caller that "they were calling a personal number . . .." (ECF 1 at ¶ 24).

Plaintiff made identical allegations in a previous case filed in this Court, *Koeller v. Seemplicity Security, Inc.*, No. 4:24-cv-00528-SRC, 2024 WL 4751306 (E.D. Mo. Nov. 12, 2024). In that case, Chief District Court Judge Clark dismissed Plaintiff's treble-damages claim because "Koeller has not sufficiently pleaded a claim for treble damages . . .." *Id.* at *5. As is the case here, Plaintiff alleged in that case only that: (a) "he received two calls from Seemplicity"; (b) that he told Seemplicity's employee "that he was 'calling a personal number'". *Id.* The Judge Clark specifically noted that:

> Koeller, however, has not alleged any facts showing that Seemplicity knew that Koeller had registered his phone number on the national do-not-call registry. Nor has Koeller alleged any facts showing that Seemplicity purposefully called a residential telephone subscriber who had registered his number on the national do-not-call registry.

*Id.* Thus, Judge Clark concluded, "Koeller has not sufficiently pleaded a claim for treble damages, and the Court dismisses his treble-damages claim accordingly." *Id.*

The decision by Judge Clark aligns with similar cases decided in other contexts, where other federal courts have consistently rejected the same type of conclusory allegations as insufficient to state or support a claim for treble damages. *See, e.g. Woods v. CV McDowell, LLC*, No H-17-0152, 2018 WL 1187492 at *4 (W.D. Tex. Feb. 5, 2018) (denied request for treble damages due to insufficient allegations in the Complaint which would support an award based on

defendant's willful violations); *Health One Med. Ctr., Eastpointe, P.L.L.C. v. Mohawk Inc.,* No. 16-cv-13815, 2017 WL 1132337 at *2 (E.D. Mich. Mar. 27, 2017) (denied request for treble damages under the TCPA because plaintiff failed to identify the actions or conduct which supported a finding that the violations were willful or knowing.); *Lucas v. Monitronics Int'l, Inc.,* No. 1:17-cv-374, 2020 WL 6440255, at *2, n. 3 (S.D. Ohio Nov. 3, 2020) (holding that plaintiff's conclusory allegations that defendant's actions were willful were no more than a legal conclusion couched as a factual allegation).

Accordingly, for the same reasons that Judge Clark dismissed Plaintiff's treble-damages claim in *Koeller v. Seemplicity Security, Inc.*, this Court should dismiss his identically alleged treble-damages claim in this case.

## **CONCLUSION**

For all of the reasons set forth above, Plaintiff's Complaint should be dismissed in its entirety or, at a minimum, dismissed to the extent that it seeks an award of treble damages.

DATED: November 13, 2025

BRYAN CAVE LEIGHTON PAISNER LLP

By: */s/ Darci Madden*
Darci Madden
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
darci.madden@bclplaw.com

Martha Kohlstrand
90 S. Cascade Avenue, Suite 1300
Colorado Springs, CO 80903
(303) 417-8516
martha.kohlstrand@bclplaw.com

Attorneys for Defendant
*OX APPSEC SECURITY INC.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed on this 13th day of November, 2025 via the court's electronic filing system which will serve notice to all counsel of record.

/s/ Darci F. Madden