# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **EDWARD J. KOELLER**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**OX APPSEC SECURITY INC.**,<br><br>Defendant. | Case No. 4:25-cv-00641-MTS<br><br>Honorable District Judge<br>Matthew T. Schelp |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### OX APPSEC SECURITY INC.'S AMENDED MOTION TO DISMISS

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................ 1

II.   Background ............................................................................................................... 1

III.  Legal Standard .......................................................................................................... 2

IV.   Argument .................................................................................................................. 2

   A.   Plaintiff sufficiently pleaded that his telephone is "residential." ........................ 2

   B.   After *Loper Bright*, courts consistently apply the TCPA to cellphones. ........... 3

   C.   Dismissing treble damages would be improper and procedurally premature. ..... 9

V.    Conclusion .............................................................................................................. 10

i

I.  INTRODUCTION

Plaintiff Edward J. Koeller ("Plaintiff") sued Defendant OX Appsec Security Inc. ("Defendant" or "OX Appsec Security") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Now, Defendant moves for dismissal—arguing that *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) foreclose the asserted TCPA claim. But after *Loper Bright* and *McLaughlin*, courts have consistently rejected the argument that Defendant, particularly at the pleading stage.

As explained *infra*, the motion should be denied for three key reasons. **First**, Plaintiff sufficiently pleaded that his telephone is "residential." **Second**, residential subscribers of cellular telephone numbers are entitled to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision under the statute's plain language because the TCPA protects "residential telephone *subscriber[s]*"—not simply *residential telephones*—and the term "residential telephone *subscriber*" encompasses all types of telephone lines and devices (landline and cellular) so long as they are used for personal purposes. The Court can reach this conclusion based on the TCPA's plain text. And this is the only interpretation consistent with the TCPA's purpose of protecting residential privacy interests, which is likely every Court following *Loper Bright* has held the same. **Third**, dismissing treble damages would be improper and procedurally premature.

II.  BACKGROUND

Plaintiff registered his residential cellphone number on the National Do-Not-Call Registry in 2007, and also on the Missouri No-Call List in 2013. *See* Compl. ¶¶16–17. His telephone number "is a non-commercial telephone number not associated with any business" and "is a

1

cellular telephone number used for personal residential purposes." *Id*. ¶¶14–15. Furthermore, Plaintiff has "never been a customer of OX Appsec Security and never consented to receive calls from OX Appsec Security." *Id*. ¶18.

Nonetheless, Plaintiff received at least two (2) nonconsensual telephone solicitations from Defendant in March 2025, during which Defendant attempted to sell its cybersecurity products. *Id*. ¶¶19–27. During both calls, the caller identified themselves as "OX Security." *Id*. On the first call, Plaintiff explained that he was not interested and that Ox Security had called his "personal number[.]" *Id*. ¶24. Plaintiff then received an email from Defendant stating that "hopefully we did not get off on the wrong foot by me calling you on your personal cell. Hopefully this would be a better way of reaching you." *Id*. ¶25. This email confirms Defendant's contemporaneous knowledge that it was calling Plaintiff's personal, residential cell phone. Thereafter, Plaintiff received a second telephone call—and Defendant again solicited Plaintiff to purchase cybersecurity products. *Id*. ¶26.

### III.    LEGAL STANDARD

For a Rule 12(b)(6) motion, the court assumes the factual allegations as true and construes them in favor of the nonmovant. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc*., 592 F.3d 853, 862 (8th Cir. 2010).

### IV.    ARGUMENT

####    A.    Plaintiff sufficiently pleaded that his telephone is "residential."

2

Plaintiff alleged that his telephone number "is a non-commercial telephone number not associated with any business" and "a cellular telephone number used for personal residential purposes." Compl. ¶¶14–15. Additionally, Plaintiff placed his telephone number "on the National Do Not Call Registry since August of 2007" and "on the Missouri No-Call List since January 1, 2013." *Id*. ¶¶16–17. Taken together, these allegations are sufficient—at this early stage—to plead that his telephone is "residential" under the TCPA. *Vallesillo v. Money Tree Merch. Servs. Corp.*, No. 8:23-CV-536, 2024 U.S. Dist. LEXIS 97600, at *22 (D. Neb. May 23, 2024) (holding allegations sufficient to plead residential use at the Rule 12 stage).

In response, Defendant appears to attack a strawman—suggesting that Plaintiff asked the Court to "simply presume that all cellular numbers submitted to the NDNCR are 'residential' cellular numbers." *See* Dkt. No. 24, at 8–9. However, Plaintiff has not asked the Court to "presume" anything—rather, Plaintiff specifically pleaded that his telephone number is "a non-commercial telephone number not associated with any business" and "used for personal residential purposes." *Id*. ¶¶14–15. These allegations are sufficient, and dismissal is improper. *See, e.g., Koeller v. Cyflare Sec., Inc.*, No. 4:25-cv-00410, 2025 U.S. Dist. LEXIS 231540, at *1 (E.D. Mo. Nov. 25, 2025) (denying dismissal when the plaintiff alleged that his phone was used "for personal residential purposes"); *Koeller v. Seemplicity Sec. Inc.*, No. 4:24-cv-00528, 2024 U.S. Dist. LEXIS 205164, at *8 (E.D. Mo. Nov. 12, 2024) (finding that Plaintiff Koeller properly alleged that his telephone was "residential"). Plaintiff's allegations stand on their own factual footing and do not rely on any regulatory presumption.

**B.    After *Loper Bright*, courts consistently apply the TCPA to cellphones.**

Section 227(c) protects residential subscribers, not a hardware type. In context, "residential" distinguishes personal use from business use; "telephone subscriber" covers wired

3

or wireless service. 47 U.S.C. § 227(c)(1); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206 (S.D. NY. 2024). The Court should conclude that an individual residential subscriber to a cellular telephone service is a "residential" subscriber protected by the statute. The statute does not require transmission by wire, or any type of technology for that matter. First, consider who is protected: "residential telephone subscribers" or, elsewhere, just "residential subscribers." 47 U.S.C. §§ 227(c)(1), (c)(3). Unpacking that language yields the same conclusion. In context, the ordinary meaning of § 227(c)'s text here establishes that Congress authorized the FCC to protect *all* "residential telephone subscribers," including cell phone subscribers. 47 U.S.C. § 227(c)(1). For starters, a "subscriber" is anyone who gets a bill in exchange for service. *See Cacho*, 739 F. Supp. 3d at 206. So, a person can be a "telephone subscriber" to any telephone service, either wired or wireless. *Id.*; *Wilson v. Hard Eight Nutrition LLC*, No 6:25-cv-144, 2025 WL 1784815, at *5 (D. Or. June 27, 2025). That leaves the word "residential," but that word doesn't exclude cell phone subscribers, either.

As used in the TCPA, "residential" is just the opposite of one that is used exclusively for "business," not "landline" from "wireless." *See, e.g.*, *Isaacs v. USHealth Advisors, LLC*, 2025 WL 2268359 (N.D. Ga. Aug. 7, 2025). So, the word "residential" in § 227(c) distinguishes types of subscribers and refers to the *purposes* for which a phone is used, not its technology, physical characteristics, or location. *Wilson,* 2025 WL 1784815, at *5; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-cv-1569, 2024 WL 184449, at *5-7 (M.D. Pa. Jan. 17, 2024). And "residential subscriber" means a subscriber who uses their phone "for personal activities associated with his or her private, domestic life." *Cacho*, 739 F. Supp. 3d at 206; *accord Isaacs*, 2025 WL 2268359, at *3; *Wilson*, 2025 WL 1784815, at *5; *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-2087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024). Many cell phone subscribers,

4

including Plaintiff, fit that description.

And, as *Jackson* explained, 2024 WL 184449, at *5, Defendant's argument commits a fundamental grammatical error, which also explains why Plaintiff's reading doesn't "conflate" "residential" and "cellular" "telephones," because the adjectives *don't even modify the word "telephone"*:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

The TCPA's text and FCC regulations establish that meaning of the word "residential," and nothing about that meaning is contrasted with the word "cellular." Rather, it is contrasted with the word "business." Congress used the word "residential" in the TCPA's statutory findings in *this* manner, and not in the manner that Defendant proposes. For example, Congress noted that "businesses actively telemarket goods and services to *business and residential* customers." Pub. L. No. 102–243, 105 Stat. 2394, § 2 (emphasis added). The current text of the TCPA, as amended in 2005, also contrasts "residential subscriber" with "business subscriber." 47 U.S.C. § 227(a)(2)(A). And FCC statutory regulations dating back to the 1990s explicitly define "residential subscriber" to mean "a subscriber … *that is not a business subscriber*." 47 C.F.R. § 64.2305(d) (emphasis added); *see* 14 F.C.C. Rcd. 15550, 15692 (1999). Defendant's reliance on *Insurance Marketing Coalition* is misplaced.

That meaning of "residential" also aligns with the "express aim" of the Do Not Call List: to protect residential subscribers' "'privacy rights.'" *Wilson*, 2025 WL 1784815, at *6 (quoting

5

47 U.S.C. § 227(c)(1), (2)). That shows that "Congress's interest in Section 227(c) was in the person and province that was being invaded and not simply in the technology through which the invasion was effected." *Cacho*, 739 F. Supp. 3d at 207. Those interests "do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than a landline." *Lyman*, 2024 WL 3406992, at *4.

This reading also aligns with the purpose and structure of the TCPA as a whole as protecting privacy rights for cell phone subscribers receiving text messages. In passing the statute, Congress expressly found that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting Congressional findings). The statute as whole responds to those findings by providing protection from noxious telemarketing practices across a wide range of devices and telephonic communication mediums that receive "messages." So, Congress clearly did not understand "privacy rights" to be the exclusive province of landline phone subscribers receiving voice calls.

The statute protects a *subscriber*—a person who uses a number for personal, residential purposes—not a physical wire in a house. In support of its proposition that a "residential subscriber" means a "subscriber to a copper landline," Defendant points out that, in a different part of the TCPA, in restrictions on autodialer and robocall technology in § 227(b), the statute uses the words "cellular telephone service," while § 227(c) does not have similar language. "The force of any negative implication, however, depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Here, context establishes that "Congress used the term 'residential' in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206. Finally, if imposed on the statute today, a landline-only interpretation would have disruptive consequences. Notably, the

6

existing Do Not Call List database contains hundreds of millions of numbers, with no way to tell which are cell phones. *Cacho*, 739 F. Supp. 3d at 203–04 & n.5. So, Defendant's interpretation would likely require "jettisoning the existing database to start anew," upending protection for millions, including landline subscribers who indisputably belong on the list. *Id*.

Numerous courts have explicitly rejected the argument—regarding *Loper Bright* and cellular phones—that Defendant now asserts. *See* Dkt. No. 24. For example, in *Harriel v. Bealls, Inc.*, the defendant argued that plaintiff "cannot bring suit under 47 U.S.C. § 227(c) because the text messages were sent to a cellphone rather than a 'residential telephone.'" No. 8:25-cv-1165, 2025 U.S. Dist. LEXIS 158157, at *3 (M.D. Fla. Aug. 15, 2025). The court applied *Loper Bright* and concluded that "the application of § 227(c) to cellphone subscribers comports with overarching intent and structure of TCPA." *Id*. at *5. In doing so, the court emphasized that "it is not alone in coming to this conclusion . . . every court examining this particular issue concerning 'residential' phones has held that the TCPA's provisions apply to cell phones." *Id*. (collecting cases).

Similarly, in *Isaacs v. USHEALTH Advisors, LLC*, the Court considered the "plain text" and "legislative history" of the TCPA—and concluded that cellular phones may be "residential." No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *4–9 (N.D. Ga. Aug. 7, 2025). In doing so, the court explained that "Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber— even when the cell phone is the sole phone for home use, as is increasingly the case. . . . Plaintiff's interpretation of the TCPA aligns with both the plain text and the objectives of the TCPA." *Id*.

*Harriel* and *Isaacs* are not alone, and numerous other courts have explicitly rejected the argument that Defendant now asserts. *See, e.g., Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *12–19 (N.D. Ohio Sep. 16, 2024) (applying *Loper*

7

*Bright* and holding that the TCPA still applies to cellphones and that such a reading is "consistent " with the statute) (collecting cases); *Lyman v. Quinstreet, Inc.*, No. 23-cv-05056-PCP, 2024 U.S. Dist. LEXIS 123132, at *12 (N.D. Cal. July 12, 2024) (applying *Loper Bright* and concluding that the TCPA still applies to cellular telephones and that "the statutory text does not support [defendant's] position"); *Cacho* at 204 (applying *Loper Bright* and concluding that "users of cellphones are not categorically excluded from the definition of 'residential subscriber' under the TCPA").

Moreover, after *Loper Bright*, courts have consistently applied the TCPA to cellphones. *See, e.g., Ryburn v. Centene Corp.*, No. 4:25CV00765 JM, 2025 U.S. Dist. LEXIS 231926, at *2 (E.D. Ark. Nov. 19, 2025) (applying the TCPA to a cellphone); *Carter v. Health Ins. King Agency, LLC*, No. 3:25-cv-00005, 2025 U.S. Dist. LEXIS 256118, at *2 (S.D. Iowa July 21, 2025) (same); *Koeller*, 2024 U.S. Dist. LEXIS 205164, at *8 (E.D. Mo. 2024) (same); *Wilson v. Better Mortg. Corp.*, No. 25 Civ. 5503, 2025 U.S. Dist. LEXIS 251694, at *2 (S.D.N.Y. Dec. 5, 2025) (same); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093, 2025 U.S. Dist. LEXIS 254358, at *1 (C.D. Cal. Dec. 3, 2025) (same); *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053, at *1 (S.D. Fla. Nov. 25, 2025) (same); *McGonigle. v. Office Depot, LLC.*, No. 25-80069-CIV, 2025 U.S. Dist. LEXIS 231061, at *1 (S.D. Fla. Nov. 25, 2025) (same); *Piet v. Office Depot, LLC*, No. 24-81488-CIV, 2025 U.S. Dist. LEXIS 230981, at *1 (S.D. Fla. Nov. 24, 2025) (same); *Moore v. Farmers Grp., Inc.*, No. 23-cv-16587, 2025 U.S. Dist. LEXIS 205986, at *3 (N.D. Ill. Oct. 20, 2025) (same); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683, 2025 U.S. Dist. LEXIS 194329, at *2 (D. Ariz. Sep. 30, 2025); *Massarello v. Power Home Remodeling Grp., LLC*, No. 24-cv-12480, 2025 U.S. Dist. LEXIS 166811, at *2 (E.D. Mich. Aug. 27, 2025) (same).

8

In response, Defendant relies on inapposite authority that lacks persuasive value. *See* Dkt. No. 24, at 4–8. For one, Defendant relies on several pre-*Loper Bright* cases. *Id*. at 4–7. But such cases are of limited persuasive value after *Loper Bright* effectuated a precedential "sea change[.]" *See, e.g., Lopez v. Bondi*, 151 F.4th 1196, 1197 (9th Cir. 2025) (describing *Loper Bright* as a "sea change"); *Chavez v. Bondi*, 134 F.4th 207, 211 (4th Cir. 2025) (same). Additionally, Defendant relies on two Florida cases to argue that "following *Loper Bright* and *McKesson*, multiple district courts have rejected the FCC's interpretation of the TCPA[.]" *Id*. at 7. But those cases are inapposite and considered only whether "text messages" are "calls" under the TCPA. *See Sayed v. Naturopathica Holistic Health*, No. 8:25-cv-00846, 2025 U.S. Dist. LEXIS 209469 (M.D. Fla. Oct. 24, 2025) (finding that "a text message is not a 'telephone call'"); *see also Davis v. CVS Pharmacy, Inc*., No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025) (finding that a "text message is not a 'telephone call'" and declining "to address the separate (and more difficult) question of whether a cell phone subscriber is a 'residential telephone subscriber'").

Simply put, Defendant's inapposite citations are of limited persuasive value because *Harriel*, *Isaacs*, *Lirones*, *Lyman*, *Cacho*, *Ryburn*, *Carter*, *Koeller*, *Wilson*, *Dilanyan*, *Glasel*, *McGonigle*, *Piet*, *Moore*, *Abboud*, and *Massarello* provide clear guidance. Thus, Plaintiff has satisfied his pleading burden, and dismissal is improper.

**C.     Dismissing treble damages would be improper and procedurally premature.**

Unlike in *Seemplicity*, Plaintiff here alleges facts demonstrating Defendant's actual knowledge before the second call. *See* Compl. ¶40. During the first call, Plaintiff "informed the caller they were calling a personal number" and that he "was not interested[.]" *Id*. ¶24. Afterwards, Defendant sent Plaintiff an email stating that "hopefully we did not get off on the wrong foot by

9

me calling you on your personal cell." *Id*. ¶25. Nonetheless, Defendant called Plaintiff a second time—and continued to solicit the same cybersecurity products. *Id*. ¶¶26–27. Thus, the second call was plausibly a "willful or knowing" violation because Defendant plausibly had knowledge that it was calling a residential telephone subject to the TCPA. *Id*. ¶¶24–27. Thus, the complaint lacks the issues present in *Koeller*, 2024 U.S. Dist. LEXIS 205164, at *8.

Moreover, dismissing treble damages—at the pleading stage—would be improper and procedurally premature. *See* Dkt. No. 24, at 9–11. For one, the argument regarding treble damages "is misplaced because treble damages, like punitive damages, 'are a form of relief and thus not a claim subject to a Rule 12(b)(6) motion to dismiss.'" *Koeller*, 2025 U.S. Dist. LEXIS 231540, at *5 (quoting *R.L. Mlazgar Assocs. v. Focal Point, L.L.C*., 0:22-cv-942, 2024 U.S. Dist. LEXIS 194040, at *22 (D. Minn. June 14, 2024)). After all, the Eighth Circuit is clear that "[t]he amount of damages to be recovered is based upon the proof, not the pleadings." *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C*., 635 F.3d 1106, 1109 (8th Cir. 2011).

V.     **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny the motion.

*[Counsel signature block to follow on next page.]*

10

DATE: December 18, 2025

                                              Respectfully submitted,

By: /s/ *Cassandra P. Miller*
Cassandra P. Miller *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
cmiller@straussborrelli.com

Anthony Paronich
**PARONICH LAW PC**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
T: (617) 485-0018
F: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        Respectfully submitted,

        By: /s/ *Cassandra P. Miller*
        Cassandra P. Miller *(pro hac vice)*
        **STRAUSS BORRELLI PLLC**
        980 N. Michigan Avenue, Suite 1610
        Chicago, Illinois 60611
        T: (872) 263-1100
        F: (872) 263-1109
        cmiller@straussborrelli.com

        *Attorneys for Plaintiff*