**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD J. KOELLER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-00641 |
| OX APPSEC SECURITY INC., | ) ) | |
| Defendant. | ) | |

**OX APPSEC SECURITY INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS
AND/OR DENY CLASS CERTIFICATION**

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP
Attorneys for Defendant
*OX APPSEC SECURITY INC.*
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000

– Of Counsel –
Darci F. Madden, Esq.
Martha Kohlstrand, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................. ii

FACTUAL BACKGROUND ............................................................................... 2

    1.    PLAINTIFF'S CLAIM PURSUANT TO TCPA § 227(C)(5)...................... 2

    2.    PLAINTIFF IS A CYBERSECURITY AND VULNERABILITY MANAGEMENT PROFESSIONAL ........................................... 4

APPLICABLE LEGAL STANDARDS ........................................................... 5

ARGUMENT ................................................................................................... 7

    1.    PLAINTIFF LACKS STANDING AND IS NOT AN ADEQUATE OR TYPICAL CLASS REPRESENTATIVE BECAUSE HE IS NOT A "RESIDENTIAL SUBSCRIBER." ........................................... 7

    2.    THE INDIVIDUALIZED, FACT-INTENSIVE ISSUE OF WHETHER PLAINTIFF'S CELL PHONE IS A RESIDENTIAL OR BUSINESS PHONE PREDOMINATES, AND ALSO PRECLUDES CLASS CERTIFICATION ................................................................ 9

    3.    IN THE ALTERNATIVE, THE COURT SHOULD LIMIT INITIAL DISCOVERY TO PLAINTIFF'S USE OF HIS PHONE AND SET AN EARLY DEADLINE FOR SUMMARY JUDGMENT MOTIONS ON THE "RESIDENTIAL SUBSCRIBER" ELEMENT OF THE CLAIM......12

CONCLUSION ...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. CHW Grp., Inc.*,
Case No. 21-cv-0091-LRR-MAR, 2021 WL 7285904 (N.D. Iowa June 29, 2021)........13

*Akselrod v. MarketPro Homebuyers LLC*,
2021 WL 100666 (D. Md. Jan. 12, 2021) .....................................................................14

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................... 7

*In re Baycol Products Litig.*,
593 F.3d 716 (8th Cir. 2010) *vacated on other grounds*, 2011 WL 11747958
(8th Cir. Aug. 4, 2011) ................................................................................................. 5

*Bennett v. Nucor Corp.*,
2005 WL 1773948 (E.D. Ark. July 6, 2005) ................................................................ 7

*Cameron v. CHW Group, Inc.*,
Case No. 2:23-cv-00320-HCN-DBP, 2025 WL 2336513 (D. Utah Aug. 13, 2025) .. 14, 15

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022)...................................................................................8, 14

*Clauss v. Legend Sec., Inc.*,
4:13-cv-00381-JAJ, 2014 WL 10007080 (S.D. Iowa Sept. 8, 2014)..............................14

*Cody v. City of St. Louis*,
2021 WL 6112480 (Dec. 27, 2021)............................................................................... 8

*Combs v. Cordish Cos.*,
2015 WL 438050 (W.D. Mo. Feb. 3, 2015) ................................................................6, 9

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013) ............................................................................................ 6, 7, 10

*Donelson v. Ameriprise Fin. Servs.*,
999 F. 3d 1080 (8th Cir. 2021)...................................................................................8, 10

*East Tex. Motor Freight System, Inc. v. Rodriguez*,
431 U.S. 395 (1977)..................................................................................................... 8

*Evans & Green, LLP v. That's Great News, LLC*,
2012 WL 4888471 (W.D. Mo. Oct. 15, 2012) .............................................................12

*Halvorson v. Auto-Owners Inc. Co.*,
   718 F.3d 773 (8th Cir. 2013) ....................................................................10

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................11

*Hicks v. Sw. Energy Co.*,
   330 F.R.D. 183 (E.D. Ark. 2018) ............................................................... 6

*Johannessohn v. Polaris Indus., Inc.*,
   450 F.Supp.3d 931 (D. Minn. 2020), *aff'd* 9 F.4th 981 (8th Cir. 2021)..........................12

*Katz v. Liberty Power Corp., LLC*,
   2019 WL 957129 (D. Mass. Feb. 27, 2019) ................................................14

*Koeller v. Airgap Networks, Inc.*,
   No. 4:23-cv-01257-HEA (E.D. Mo. 2023) ................................................... 1

*Koeller v. Corelight Security, Inc.*,
   No. 4:24-cv-01222-ACL (E.D. Mo. 2024) ................................................... 1

*Koeller v. CybelAngel USA Inc.*,
   No. 4:23-cv-00319-SEP (E.D. Mo. 2023) .............................................*passim*

*Koeller v. Cyflare Security, Inc.*,
   Case No. 4:25-cv-00410-MTS, 2025 WL 3280316 (E.D. Mo. Nov. 25, 2025)...............14

*Koeller v. Delinea, Inc.*,
   No. 4:24-cv-00394-HEA (E.D. Mo. 2024) ................................................... 1

*Koeller v. Numrich Gun Parts Corp.*,
   No 1:22-cv-00675-DNH-CFH (N.D.N.Y. 2022) ........................................... 1

*Koeller v. OX AppSec Security Ltd.*,
   No. 4:25-cv-00641-MTS (E.D. Mo. 2025) ................................................... 1

*Koeller v. Picnic Corp.*,
   No. 4:23-cv-00916-SPM (E.D. Mo. 2023) ................................................... 1

*Koeller v. Risk Based Security, Inc.*,
   No. 4:21-cv-00540-HEA (E.D. Mo. 2021) ................................................... 1

*Koeller v. Seemplicity Security Inc.*,
   No. 4:24-cv-00528-SRC (E.D. Mo. 2024) ................................................... 1

*Koeller v. TextMarks, Inc.*,
   3:11-cv-02045-JM-JMA (N.D. Cal. 2011) ................................................... 1

*Koeller v. Vulcan Cyber, Inc.*,
No. 4:23-cv-00101-SRW (E.D. Mo. 2023)........................................................ 1

*Koeller v. Zilla Security, Inc.*,
No. 1:24-cv-11228-FDS (D. Mass. 2024)......................................................... 1

*Kraetsch v. USAA*,
2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) ................................................. 5

*Larson v. Burlington Northern and Santa Fe Ry. Co.*,
210 F.R.D. 663 (D. Minn. 2002).................................................................... 14

*Leschinsky v. Inter-Continental Hotels Corp.*,
2015 WL 6150888 (M.D. Fla. Oct. 15, 2015) ............................................... 14

*Estate of Lokken v. UnitedHealth Group, Inc.*,
Case No. 23-cv-3514, 2025 WL 2607196 (D. Minn. Sept. 8, 2025)............... 13

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ........................................................................ 7

*Mattson v. New Penn. Fin., LLC*,
2023 WL 8452659 (D. Or. Oct. 12, 2023) *report and recommendation*
*adopted*, 2024 WL 21568 (D. Or. Jan. 2, 2024)..................................... 8, 10, 12

*Mattson v. Rocket Mortgage, LLC*,
2024 WL 4794710 (D. Or. Sept. 16, 2024) ........................................... 10, 12

*Mattson v. United Mortgage Corp.*,
2024 WL 4794711 (D. Or. Sept. 16, 2024) ........................................... 10, 12

*Moore v. Demand Science Grp., LLC*,
2024 WL 175743 (N.D. Ill. Jan. 4, 2024) ...................................................... 14

*Newell v. Aliera Healthcare, Inc.*,
2020 WL 13568762 (N.D. Ga. Apr. 6, 2020).................................................. 14

*Old Republic Ins. Co. v. Whitaker*,
2012 WL 13027952 (W.D. Mo. Jan. 10, 2012)................................................ 9

*Osidi v. Assurance IQ, LLC*,
2022 WL 623733 (D. Mass. Mar. 3, 2022) .................................................... 14

*Pavelka v. Paul Moss Ins. Agency, LLC*,
2023 WL 3728199 (N.D. Ohio May 30, 2023) ............................................. 14

*Pavlik v. Cargill, Inc.*,
9 F.3d 710 (8th Cir. 1993)............................................................................ 13

*Payne v. Sieva Networks,*
    347 F.R.D. 224 (N.D. Cal. 2024)................................................................ 7, 10, 12

*Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.,*
    Civ. No. 12-2132, 2014 WL 413534 (D.N.J. Feb. 4, 2014)............................................13

*Sapan v. Fin. of Am. Reverse LLG,*
    No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935 (C.D. Cal. July 14, 2025) ..............14

*Shanahan v. MFS Supply LLC,*
    8:23CV475, 2025 WL 885265 (D. Neb. Mar. 21, 2025) ................................................13

*Stuart v. Flob. Tel\*Link Corp.,*
    956 F.3d 555 (8th Cir. 2020) .......................................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S.Ct. 2541 (2011) ................................................................................................. 6

*Wilbur-Ellis Co. v. Gompert,*
    No. 8:21CV340, 2023 WL 6038022 (D. Neb. Sept. 15, 2023)......................................13

*Wilcox v. State Farm Fire & Cas. Co.,*
    2016 WL 6908111 (D. Minn. Sept. 7, 2016) ................................................................ 5

**Statutes**

47 U.S.C. § 227(c)(5) ..........................................................................................................2, 3

TCPA § 227 .........................................................................................................................10

TCPA § 227(c) .....................................................................................................................2, 3

Telephone Consumer Protection Act ........................................................................... *passim*

**Other Authorities**

16 C.F.R. § 310.6(b)(7) ........................................................................................................14

Fed. R. Civ. P. 23 ................................................................................................................2, 12

Fed. R. Civ. P. 23(a)...................................................................................................... *passim*

Fed. R. Civ. P. 23(b)........................................................................................................7, 10

Fed. R. Civ. P. 23(b)(3)......................................................................................... 6, 7, 9, 15

Fed. R. Civ. P. 23(c)(1)(A) ...............................................................................................5, 13

Fed. R. Civ. P. 23(d)(1)(D) .............................................................................................. 5

Fed. R. Civ. P. 23(d)(1)(E) ................................................................................. 5

Fed. R. Civ. P. 42(a)(3) ...................................................................................... 13

Fed. R. Civ. P. 42(b) .......................................................................................... 13

Fed. R. Evid. 201(b) ........................................................................................... 9

Fed. R. Evid. 801(d)(2) ....................................................................................... 9

Plaintiff has filed at least eleven putative class actions under the Telephone Consumer Protection Act ("TCPA") since 2011.[1] None of them have resulted in a class being certified – except a single settlement class.[2] Because of Plaintiff's frequent filing, there is an extensive public record as to his use of the cellular telephone on which he alleges he received calls here. That record demonstrates he is not a "residential subscriber," as is required to prove a violation of the TCPA's "do not call" provisions. If the Court does not dismiss the Complaint on Ox AppSec Security, Inc.'s ("Ox's") pending motion, the Court should, in the alternative, grant this motion to strike class allegations and/or deny class certification because Plaintiff is not an adequate or typical class representative. In addition, individualized and fact-intensive issues involving putative class members' use of their cell phones will necessarily predominate over any common issues, because no class-wide proof will be able to prove this element as to all class members.  Indeed, the pleaded claims reflect that individualized proof is likely to show that many class members (if not most) were not "residential subscribers," given that Plaintiff admits: (1) Ox is a cybersecurity company that sells to "application security teams" rather than individual consumers, (2) the call Plaintiff allegedly received related to the sale of business (not consumer) services, (3) the caller allegedly apologized for calling a supposed personal number; and (4) Plaintiff uses his cell

---

[1]      *See Koeller v. TextMarks, Inc.*, 3:11-cv-02045-JM-JMA (N.D. Cal. 2011); *Koeller v. Risk Based Security, Inc.,* No. 4:21-cv-00540-HEA (E.D. Mo. 2021); *Koeller v. Vulcan Cyber, Inc.,* No. 4:23-cv-00101-SRW (E.D. Mo. 2023); *Koeller v. CybelAngel USA Inc.,* No. 4:23-cv-00319-SEP (E.D. Mo. 2023); *Koeller v. Picnic Corp.,* No. 4:23-cv-00916-SPM (E.D. Mo. 2023); *Koeller v. Airgap Networks, Inc.,* No. 4:23-cv-01257-HEA (E.D. Mo. 2023); *Koeller v. Delinea, Inc.,* No. 4:24-cv-00394-HEA, (E.D. Mo. 2024); *Koeller v. Seemplicity Security Inc.,* No. 4:24-cv-00528-SRC (E.D. Mo. 2024); *Koeller v. Corelight Security, Inc.,* No. 4:24-cv-01222-ACL (E.D. Mo. 2024); *Koeller v. Zilla Security, Inc.,* No. 1:24-cv-11228-FDS (D. Mass. 2024); *Koeller v. OX AppSec Security Ltd.,* No. 4:25-cv-00641-MTS (E.D. Mo. 2025). Mr. Koeller was also the putative class-representative in a purported class action involving a data breach allegedly committed by a firearm parts retailer. *Koeller v. Numrich Gun Parts Corp.,* No 1:22-cv-00675-DNH-CFH (N.D.N.Y. 2022).

[2]      *See Koeller v. TextMarks, Inc.*, 3:11-cv-02045-JM-JMA, Dkt. No. 21 (N.D. Cal. 2011).

phone for both residential and business purposes (thus making it a "mixed-use" cell phone). In any event, that evidence will be fact-intensive and individualized, whatever it shows.

As a result of Plaintiff's lack of typicality and adequacy and the need for individualized proof on the "residential subscriber" element, Plaintiff cannot satisfy the requirements for class certification under Fed. R. Civ. P. 23. Alternatively, if the Court does not deny class certification outright, it should initially limit discovery to only whether Plaintiff's cell phone use qualifies him a "residential subscriber," and set an early deadline (before any burdensome class-wide discovery) for dispositive motions on that issue. Whether Plaintiff's cell phone was a "business" or a "residential" phone is dispositive of his individual claim, and resolving this issue early will save the parties and the Court from the substantial costs and burdens of class-wide discovery.

## FACTUAL BACKGROUND

### 1. PLAINTIFF'S CLAIM PURSUANT TO TCPA § 227(C)(5)

Plaintiff alleges Ox violated the TCPA by calling Plaintiff and putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls. ECF 1 ¶ 3. As to himself, Plaintiff alleges his cellular telephone number, (314) 602-XXXX is "a non-commercial telephone number not associated with any business" and is "used for personal residential purposes," that is listed on the National Do Not Call Registry. *Id.* at ¶¶ 14-17. Plaintiff claims he nevertheless received two calls, on March 6 and March 28, 2025, in which a representative of Ox "sought to solicit the Plaintiff to purchase its cybersecurity products." *Id.* at ¶¶ 19, 23. Plaintiff describes the services being offered as "services to assist application security teams," rather than consumers. *Id.* at ¶ 27. Plaintiff claims that he informed the caller, on the first

call, "they were calling a personal number . . .." and that the caller apologized for contacting

him on a personal phone and asked for a "better way of reaching" him.  *Id.* at ¶¶ 25.

Plaintiff's Complaint contains a series of conclusory "Class Action Allegations,"

which state that he can meet the requirements to certify a class consisting of:

> All persons in the United States whose (1) telephone numbers were on the
> National Do Not Call Registry for at least 31 days, (2) but who received more
> than one telemarking call from or on behalf of Defendant encouraging the
> purchase of OX Appsec Security's goods or services, (3) within a 12-month
> period, (4) at any time in the period that begins four years before the date of
> filing this Complaint to trial.

*Id.* at ¶ 30.  With respect to "Commonality and Predominance," Plaintiff alleges "[t]here are

many questions of law and fact common to the claims of Plaintiff and members of the Class,

and those questions predominate over any questions that may affect individual members of

the Class."  *Id.* at ¶ 34.  Plaintiff claims that these questions include:

> a.    Whether Defendant obtained prior express invitation or permission
> under the TCPA before the calls at issue;
>
> b.    Whether Defendant has established and implemented, with due care,
> reasonable practices and procedures to effectively prevent telephone
> solicitations in violation of the TCPA's do-not-call regulations;
>
> c.    Whether Defendant should be held liable for violations on its behalf;
> and
>
> d.    Damages, including whether any violations were performed willfully
> or knowingly, such that Plaintiff and the other Class members are entitled to
> treble damages under 47 U.S.C. § 227(c)(5).

*Id.* at ¶ 34.  Plaintiff alleges that his claims "are typical of the other Class members in that

Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing

calls and Class members sustained similar injuries and damages as a result of Defendant's

uniform illegal conduct."  *Id.* at ¶ 32.  Plaintiff's Complaint does not acknowledge that, if a

class is certified, he will also be required to prove, as an element of the claims, that each class

member is a "residential subscriber," and he does not (and cannot) allege that this could be proved with class-wide proof.

## 2.    PLAINTIFF IS A CYBERSECURITY AND VULNERABILITY MANAGEMENT PROFESSIONAL

Plaintiff has filed at least ten other putative class actions based on alleged calls to his cell phone. No court has ever certified a litigated class on these claims, save one stipulated settlement class, but a public record has been developed as to Plaintiff's use of his cell phone. The transcript from Plaintiff's deposition in another TCPA case, *Koeller v. CybelAngel USA Inc.,* No. 4:23-cv-00319-SEP (E.D. Mo. 2023), shows that he regularly uses his cell phone for business purposes and that his employer has paid at least a portion of the phone's cost. *See* Exhibit A to the Declaration of Darci Madden, dated January 9, 2026 ("Madden Dec.").

When Plaintiff was deposed in January of 2024, he was employed as a "Cyber security vulnerability management engineer" at Ameren. Madden Dec., Ex. A at Pages 12-13. According to Plaintiff, Ameren is "an energy company that provides electrical generation, transmission distribution, as well as some natural gas transmission." *Id.* at Page 13. Plaintiff has worked in cybersecurity for Ameren for most of his career there. *Id.* He "work[s] with stakeholders and other teams to mitigate the vulnerabilities before cyber security hackers can." *Id.* at Page 14. He works with Ameren's "tools to discover vulnerabilities," and spends time "researching ways to mitigate those vulnerabilities through research web browsing." *Id.* Page 14. When he was deposed, Plaintiff was working from home, but "sometimes" going into the office one day a week. *Id.* Ameren has approximately 120 employees that work in cybersecurity, and Plaintiff works with a team of 3 others in his role. *Id.*

Plaintiff has three separate phone numbers: (1) a landline telephone number (314-270-XXXX), which is a "home phone"; (2) the cellular telephone number at issue both here and

in *CybelAngel* (314-602-XXXX); and (3) a Teams phone number (314-554-XXXX), on which calls ring through to his computer. *Id.* at Pages 40-42. Although Plaintiff characterizes his cell phone as a "personal cell phone," Plaintiff admitted under oath that he has used his cell phone regularly for business, and had received a partial stipend from his employer for more than 5 years to help pay for his cell phone service. *Id.* at Pages 44-45, 56. This stipend was intended "to ensure that he is available to address emergency issues at work should an emergent event arise outside working hours." *Id.* at Pages 44-45. Plaintiff confirmed that his co-workers would both call and text him on his cell phone, and confirmed that he both made and received work calls on his cell phone bill to and from Ameren's digital command center or network operations center and Ameren's IT help desk. *Id.* at Pages 46, 53, 54-56. Plaintiff could also not rule out that he might have taken a tax deduction for his cell phone number. *Id.* at Pages 46-47 of 73 (testifying that he did not know if he had).

## APPLICABLE LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("Rule") 23(c)(1)(A), a court presented with a putative class action is required to determine class status "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) and (E). Early motions to strike class allegations, as well as preemptive motions to deny class certification, are permitted in the Eighth Circuit. *See*, *e.g.*, *Wilcox v. State Farm Fire & Cas. Co.*, 2016 WL 6908111 (D. Minn. Sept. 7, 2016); *Kraetsch v. USAA*, 2015 WL 1457015 (E.D. Mo. Mar. 30, 2015); *see also In re Baycol Products Litig.*, 593 F.3d 716, 720 n.2 (8th Cir. 2010) *vacated on other grounds*, 2011 WL 11747958 (8th Cir. Aug. 4, 2011).

Under Rule 23(a), a plaintiff seeking to maintain a class action must show: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) adds further requirements, including that: (5) questions of law or fact common to class members predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *see also Hicks v. Sw. Energy Co.*, 330 F.R.D. 183, 194 (E.D. Ark. 2018).[3]

A determination of whether class allegations should be stricken may require the court faced with a motion to strike "to probe behind the pleadings before coming to rest on the certification question, and . . . certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (internal quotations and citations omitted). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)). Because evaluating a motion concerning class certification "will require the Court to conduct a preliminary look into the merits," the Court may look to depositions taken of a party in a prior case where appropriate. *See Combs v. Cordish Cos.*, 2015 WL 438050 (W.D. Mo. Feb. 3, 2015). And "'the plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements

---

[3] No discovery is required regarding Plaintiff's adequacy here because the public record demonstrates that Plaintiff is not a residential subscriber, and nothing Plaintiff could discover from Ox would have any bearing on the way that he uses his phone. No discovery is required regarding the predominance requirement either, because the very nature of the "residential subscriber" question demonstrates that it cannot be satisfied with common proof in a case like this (involving calls regarding business-to-business services made to a named Plaintiff who admits his phone is used for mixed purposes). Ox is only challenging here these two deficiencies, which are patent on the face of the Complaint and in the public record – but reserves its right to challenge Plaintiff's ability to satisfy the remaining class action requirements upon any subsequent motion(s) concerning class certification.

are satisfied or that discovery is likely to produce substantiation of the class allegations.'" *Bennett v. Nucor Corp.*, 2005 WL 1773948, at \*2 n.2 (E.D. Ark. July 6, 2005); *see also Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 228 (N.D. Cal. 2024) (holding that plaintiff in TCPA case, premised on calls made to a mixed-use cell phone, failed to "'advance a viable theory employing generalized proof to establish residential status'" and failed to show "'that discovery is likely to produce substantiation of class allegations' as to this question." (*quoting Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).

"The same analytical principles govern Rule 23(b). If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp.,* 133 S.Ct.at 1432 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997)). A court faced with a motion to strike class allegations (or a preemptive motion to deny certification), has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Id.* (internal citation omitted); *see also Payne*, 347 F.R.D. at 228 (N.D. Cal. 2024).

## **ARGUMENT**

### 1.  **PLAINTIFF LACKS STANDING AND IS NOT AN ADEQUATE OR TYPICAL CLASS REPRESENTATIVE BECAUSE HE IS NOT A "RESIDENTIAL SUBSCRIBER."**

The public record from Plaintiff's other cases makes clear that he is not a "residential subscriber" and therefore has no claim for violation of the TCPA's "do not call" provisions. As a result, he is not an adequate or typical class representative. It would be a waste of judicial resources to allow burdensome discovery and motion practice in the face of this fact.

Plaintiff's ability to pursue his claim depends on his ability to prove that his cell phone qualifies as a "residential" phone. Because the TCPA's prohibition on making more than one telephone solicitation in a 12-month period to a "residential subscriber" whose number is on

the national Do-Not-Call Registry does not prohibit calls to business numbers, Plaintiff cannot recover if the evidence shows that he used his cellular phone as a business phone.

Courts faced with determining whether a TCPA plaintiff is a "residential subscriber" consider factors such as:

> (1) whether plaintiffs have held out to the public or advertised their phone numbers for business purposes; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines, including whether the phones are part of a family usage plan; (3) whether, and the extent to which, plaintiffs use their phones for business transactions or employment; (4) whether, and the extent to which, plaintiffs' employers (or other business entities) pay for or reimburse plaintiffs for their phone bills.

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022); The *Chennette* factors are not exhaustive, and courts have routinely looked at others, including the tax treatment of the cell phone expense and whether the cell phone number has been used for business purposes (even in non-public ways).  *See, e.g.*, *Mattson v. New Penn. Fin., LLC*, 2023 WL 8452659, at *2 (D. Or. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 21568, at *1 (D. Or. Jan. 2, 2024).

Because Plaintiff cannot satisfy an element of his claim, he is not part of the proposed class and not an adequate or typical class representative. *See Amchen*, 521 U.S. 591.625 (citing *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *Cody v. City of St. Louis*, 2021 WL 6112480, at *6 (E.D. Mo. Dec. 27, 2021). This fatal defect exists without regard to any discovery from Defendant; therefore it is appropriate to strike the class allegations without imposing the expense of class-wide discovery on Defendant and the Court. *See Donelson v. Ameriprise Fin. Servs.*, 999 F. 3d 1080, 1092 (8th Cir. 2021).

Here, Plaintiff's own sworn admissions in the *CybelAngel* case demonstrate that his phone is a "mixed-use" cellular telephone, and that he uses it extensively for business

purposes.[4]  Although Plaintiff has since sought to distance himself from that testimony (and his admissions under oath), he does not dispute that he continues to predominantly work from home, he uses his cellular telephone for work, his work colleagues contact him on his cellular telephone number about his work, his work colleagues text him on his cellular telephone number about his work, and that he may even have taken a "business expense" tax deduction for his cellular telephone.  *See* Madden Dec., Ex. A at Pages 14, 44-46, 53, and 54-56.  In addition, publicly available business directories list Mr. Koeller in his role as a "Cybersecurity Vulnerability Management Engineer" and list his cellular telephone number at issue here as his "work mobile phone" or business contact number.  *See* Madden Dec., Exs. C and D.[5]

### 2.    THE INDIVIDUALIZED, FACT-INTENSIVE ISSUE OF WHETHER PLAINTIFF'S CELL PHONE IS A RESIDENTIAL OR BUSINESS PHONE PREDOMINATES, AND ALSO PRECLUDES CLASS CERTIFICATION

Separately, a class can never be certified here because the issue of whether class members were "residential subscribers" necessarily requires a series of fact-intensive, individualized inquiries. Whether each putative class member's cell phone, including Plaintiff's, qualifies as a "residential" phone, or is a business phone, predominates over any common questions – and precludes class certification under Rule 23(b)(3) as a matter of law.

---

[4]    The Court may consider Plaintiff's prior deposition here, whether or not it is admissible at trial. *See Combs v. Cordish Cos., Inc.*, 2015 WL 438050, *at* *2 (W.D. Mo. Feb. 3, 2015).  However, Plaintiff's prior deposition is admissible (and will be at trial) as an admission by a party opponent and as a public filing in the *Cyberflare* case. *See Old Republic Ins. Co. v. Whitaker*, 2012 WL 13027952, at *1 (W.D. Mo. Jan. 10, 2012) (citing FRE 801(d)(2)).

[5]    Ox submits that the Court can take judicial notice of these records pursuant to Fed. R. Evid. 201(b).  Even if the Court declines to do so for the truth of the matter asserted therein, however, the existence of these records provides further confirmation that whether Plaintiff's cell phone is used for business is going to be an individualized, fact-intensive, and hotly contested issue.

The "demanding" predominance requirement is not satisfied where the question of liability requires individualized, fact-intensive determinations. *See Comcast*, 133 S. Ct. at 1433; *see also Stuart v. Flob. Tel\*Link Corp.*, 956 F.3d 555, 560 (8th Cir. 2020). If such determinations are required with respect to each putative class member, they "'overwhelm questions common to the class,'" and certification should be denied. *See Halvorson v. Auto-Owners Inc. Co.*, 718 F.3d 773 (8th Cir. 2013) (quoting *Comcast*, 133 S.Ct. at 1433); *see also Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1093 (8th Cir. 2021).

Because of the fact intensive nature of the required inquiry, numerous courts have ruled that these individualized issues predominate in TCPA cases where the putative class-action plaintiff has a "mixed-use" cellular phone. *See Payne v. Sieva Networks*, 347 F.R.D. 224, 228 (N.D. Cal. 2024); *Mattson v. United Mortgage Corp.*, 2024 WL 4794711, at \*2-\*3 (D. Or. Sept. 16, 2024); *Mattson v. Rocket Mortgage, LLC*, 2024 WL 4794710, at \*2-\*3 (D. Or. Sept. 16, 2024); *Mattson v. New Penn. Fin., LLC*, 2023 WL 8452659, at \*2 (D. Or. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 21568, at \*1 (D. Or. Jan. 2, 2024).

*Mattson v. United Mortg. Corp.* illustrates this point. There, the plaintiff alleged the defendant violated Section 227 by making multiple calls to his cell phone number, which was on the national Do-Not-Call Registry. 2024 WL 4794711, at \*1. The defendant preemptively moved to deny class certification, disputing that his cell phone was a "residential" phone. The court concluded that whether plaintiff's cell phone was a "residential" or a "business" number was both fact-intensive and also "hotly contested." *Id.* at \*2 (*citing Mattson v. New Penn Fin., LLC, supra*). The court also determined that the plaintiff could not meet the typicality or commonality requirements of Rule 23(a), or the predominance requirement of Rule 23(b) "'because individual questions concerning whether he is a residential subscriber

subject to the TCPA's protections will predominate the litigation.'" *Id.* at \*2-\*3 (quoting *Mattson v. New Pen Fin., LLC, supra*). Those "individual questions" risked "becoming a focus of the litigation and thus class certification is inappropriate." *Id.* at \*3 (citing *Mattson v. New Pen. Fin., LLC*; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.")).[6]

As demonstrated above, just determining how Mr. Koeller used his cell phone requires individualized factual examination. It is clear that the same fact-intensive type of inquiry will be needed to prove this element for every class member. Indeed, Plaintiff's own complaint alleges that Ox is in the business of selling to businesses – not individual consumers – and the supposed call to Plaintiff that is described in the complaint is a business-to-business call, relating to services available to "cybersecurity teams" (and the caller supposedly apologized for reaching an ostensibly personal line).

For each putative class member, individualized discovery would be necessary with respect to issues including, but not limited to, whether each cellular telephone was used for business, personal, or "mixed" purposes; whether a business or employer paid for each cellular telephone; whether and the extent to which each phone number was published for use in business dealings; and whether each phone was a cellular telephone or a landline attached to a commercial or residential location. Making these determinations would require (a) individualized written discovery to each putative class member regarding the nature of their phone and its use (as well as whether each putative class member had an established

---

[6]      Although the court in *Mattson v. United Mortg. Corp.* addressed typicality and commonality in addition to predominance, the court did so in a different procedural posture than in the present case. Here, no discovery is needed as to the predominance inquiry, nor to the typicality inquiry (and certainly not class-wide discovery).

business relationship with Ox), (b) depositions of each putative class member, (c) subpoenas for phone records of each putative class member, (d) subpoenas for records from businesses and employers associated with each cellular phone, and (e) potential third-party discovery from others to test the veracity of the claims made by each putative class member with respect to their particular use of their cellular telephone.

For all of these reasons, Plaintiff cannot satisfy Rule 23's predominance requirement as a matter of law. *See Payne*, 347 F.R.D. at 228; *Mattson v. United Mortgage Corp.*, 2024 WL 4794711, at *2-*3 (D. Or. Sept. 16, 2024); *Mattson v. Rocket Mortgage, LLC*, 2024 WL 4794710, at *2-*3 (D. Or. Sept. 16, 2024); *Mattson v. New Penn. Fin., LLC*, 2023 WL 8452659, at *2 (D. Or. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 21568, at *1 (D. Or. Jan. 2, 2024).*; see also Johannessohn v. Polaris Indus., Inc.*, 450 F.Supp.3d 931, 985 (D. Minn. 2020), *aff'd* 9 F.4th 981 (8th Cir. 2021); *see also Evans & Green, LLP v. That's Great News, LLC*, 2012 WL 4888471, at *4 (W.D. Mo. Oct. 15, 2012) (denying certification where individual findings necessary as to whether each "recipient had an established business relationship with Defendants").

### 3.  IN THE ALTERNATIVE, THE COURT SHOULD LIMIT INITIAL DISCOVERY TO PLAINTIFF'S USE OF HIS PHONE AND SET AN EARLY DEADLINE FOR SUMMARY JUDGMENT MOTIONS ON THE "RESIDENTIAL SUBSCRIBER" ELEMENT OF THE CLAIM

Because the issue of whether Plaintiff's cellular telephone qualifies as a "residential" or a "business" phone will likely be dispositive of Plaintiff's individual claims, if the Court is not willing to strike the class allegations now, the Court should order limited discovery regarding Plaintiff's use of his cellular telephone before engaging in class-wide discovery, which would unnecessarily drain the resources of the parties and the Court. The Court should also set an early deadline for summary judgment motions as to whether Plaintiff is a

"residential subscriber." Bifurcating discovery and setting a schedule for an early dispositive motion on this threshold issue, pursuant to Fed. R. Civ. P. 42(b), is appropriate here, "where resolving a 'narrow, potentially dispositive issue' could obviate the need for costly class discovery." *Estate of Lokken v. UnitedHealth Group, Inc.*, Case No. 23-cv-3514 (JRT/SGE), 2025 WL 2607196, at *2 (D. Minn. Sept. 8, 2025) (quoting *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, Civ. No. 12-2132, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (TCPA case)).

District courts have broad discretion both to bifurcate discovery and "to limit discovery and decide discovery motions." *Estate of Lokken*, 2025 WL 2607196, at *2 (citing *Adam v. CHW Grp., Inc.*, 2021 WL 7285904, at *1-2 (N.D. Iowa June 29, 2021)); *Shanahan v. MFS Supply LLC*, 2025 WL 885265, at *7 (D. Neb. Mar. 21, 2025) (citing *Wilbur-Ellis Co. v. Gompert*, 2023 WL 6038022, at *1 (D. Neb. Sept. 15, 2023) (citing *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)). Rule 42(a)(3) allows courts to "issue any . . . orders to avoid unnecessary cost or delay." *Estate of Lokken*, 2025 WL 2607196, at *1. "Furthermore, and much more generally, Rule 1 mandates that the Rules 'be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.* The Rules also provide, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

Here, the details of Plaintiff's use of his cellular telephone will be dispositive. As this Court recently held in another case involving Plaintiff, the details of the mixed use of his cell phone "might prove fatal to Plaintiff's claims because the Do Not Call List regulation under which Plaintiff sues 'unambiguously applies only to residential telephone subscribers.'"

*Koeller v. Cyflare Security, Inc.*, Case No. 4:25-cv-00410-MTS, 2025 WL 3280316, at *1 (E.D. Mo. Nov. 25, 2025) (quoting *Clauss v. Legend Sec., Inc.*, 4:13-cv-00381-JAJ, 2014 WL 10007080, at *2 (S.D. Iowa Sept. 8, 2014)). Furthermore, "under the factual circumstances of a particular case, a mixed-use telephone number can constitute a business line for purposes of the TCPA." *Cyflare*, 2025 WL 3280316, at *1 (citing *Chennett v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (setting forth five factors to consider)); *see also Clauss*, 2014 WL 10007080, at *2 (quoting 16 C.F.R. § 310.6(b)(7) ("'Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies' are specifically exempt from this regulation.")).

Where the resolution of a narrow, dispositive issue can obviate the need for costly class-wide discovery, the Court can bifurcate discovery. *See Larson v. Burlington Northern and Santa Fe Ry. Co.*, 210 F.R.D. 663, 665 (D. Minn. 2002) (ordering "bifurcated discovery – that is. . . completing discovery as to the claims of the four named-Plaintiffs, prior to extensive discovery on the merits of the 'class claims.'"). Courts have recognized the efficiencies of doing so in TCPA class-actions, in particular. *Cameron v. CHW Group, Inc.*, Case No. 2:23-cv-00320-HCN-DBP, 2025 WL 2336513, at *2 and n.11 (D. Utah Aug. 13, 2025).[7] "Courts granting such motions have acknowledged the well-recognized fact that 'discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens.'" *Id.* In *Cameron*, for example, the court granted the defendant's request for bifurcated discovery

---

[7]    *See also, e.g. Sapan v. Fin. of Am. Reverse LLG*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1932935, at *3 (C.D. Cal. July 14, 2025); *Moore v. Demand Science Grp., LLC*, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024); *Pavelka v. Paul Moss Ins. Agency, LLC*, 2023 WL 3728199, at *3 (N.D. Ohio May 30, 2023) (collecting cases); *Osidi v. Assurance IQ, LLC*, 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021); *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015).

because the focus was on "narrow issues that are unique to Plaintiff's individual TCPA claim," such as whether plaintiff was a "residential telephone subscriber." *Id.* at *3. Such "narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. TCPA cases . . . present a unique opportunity that warrants bifurcated discovery due to those cost savings." *Id.*

Here, discovery focused only on Plaintiff's use of his cellular telephone followed by focused early summary judgment motions will take a short amount of time, in contrast to the costly and fact-intensive nature of class-wide discovery. The efficiency and cost savings to the parties and to the Court resulting from bifurcation are therefore clear, as is the benefit of accelerating discovery that can "be utilized in making a class certification decision later." *Cameron*, at *4. Thus, if the Court declines to deny class certification outright, Defendant respectfully submits the Court should also order limited discovery concerning only Plaintiff's mixed-use of his cell phone.

## CONCLUSION

Plaintiff cannot, as a matter of law, satisfy the predominance requirement of Rule 23(b)(3); nor can Plaintiff satisfy the commonality and typicality requirements of Rule 23(a). Accordingly, if Plaintiff's Complaint is not dismissed in its entirety, the Court should grant Ox AppSec's motion to strike Plaintiff's class allegations and/or deny class certification or, in the alternative, order the limited discovery necessary to address Plaintiff's mixed-use of his cellular telephone and set an early deadline for Ox to file a motion for summary judgment on this case-dispositive issue.

DATED: January 9, 2026          BRYAN CAVE LEIGHTON PAISNER LLP

By:   /s/ Darci F. Madden
       Darci F. Madden, Esq.
       Martha Kohlstrand, Esq
Attorneys for Defendant
*OX APPSEC SECURITY INC.*
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
darci.madden@bclplaw.com
martha.kohlstrand@bclplaw.com

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that a true and accurate copy of the foregoing was filed on this 9th day of January, 2026 via the court's electronic filing system which will serve notice to all counsel of record.

/s/ Darci F. Madden