IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD J. KOELLER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:25-cv-00641 |
| OX APPSEC SECURITY INC., | ) ) ) |
| Defendant. | ) ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF OX APPSEC SECURITY INC.'S MOTION TO DISMISS**

The Telephone Consumer Protection Act's ("TCPA's") "do not call" provisions are expressly limited to "residential" telephone subscribers. As such, Plaintiff's claims for alleged violations of the "do not call" provisions of the TCPA and its implementing regulations should be dismissed, because the calls here were allegedly made to his cellular telephone.

### ARGUMENT

In his Opposition to the Motion to Dismiss ("Opposition"), Plaintiff admits, as he must, that the plain language of the TCPA limits the application of regulations thereunder to "residential telephone subscriber[s]." *See* Doc. 30 at 3 (quoting 47 C.F.R. § 64.1200(c)(2)). However, Plaintiff alleges that he was called on a cellular telephone, by a company that markets services to businesses, not individuals. He has, therefore, not alleged any calls to a "residential subscriber." and his claim should be dismissed. Plaintiff opposes Defendant's motion by citing FCC guidance, but the Supreme Court's decisions in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, 606

U.S. 146 (2025) make clear that this Court is not bound to follow, or even defer to, the FCC's interpretation of the TCPA's "do not call" provisions. This Court should exercise its sound discretion and hold that the TCPA's prohibition against calling numbers listed on the National Do Not Call Registry ("NDNCR") only applies to numbers of "residential subscribers," and that the term "residential subscribers" does not include cellular telephone subscribers. The Court should dismiss the Complaint on these grounds.

**I.     SECTION 227(C) OF THE TCPA DOES NOT EXTEND TO CELLULAR TELEPHONES**

As the Supreme Court explained in *McLaughlin*:

> In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

606 U.S. at 156 (citing *Loper Bright*, 603 U.S. at 402). Plaintiff asserts in the Opposition that his position is reasonable, particularly given the TCPA's purpose and the prevalence of cell phones in the United States today. "Nevertheless, '[i]n the business of statutory interpretation, if [an interpretation] is not the best, it is not permissible.'" *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp.3d 894, 901 (C.D. Ill. 2025) (quoting *Loper Bright*, 603 U.S. at 400). "The 'ordinary' principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer." *Jones*, 792 F. Supp.3d at 901. "It is not for a court to legislate by reading into the TCPA something that is not there." *Id.* Rather, "it is for Congress to respond to the issues presented . . . and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life…. The Court confines itself to its assigned role which does not include legislating." *Id.*

The plain language of TCPA Section 227(c) explicitly allows the FCC to "initiate a rulemaking proceeding concerning the need to protect *residential telephone subscribers'* privacy rights" (emphasis added).  As explained further below, the TCPA draws a clear distinction between cellular phones and residential phones, and Congress intentionally omitted the reference to cellular phones when it enacted Section 227(c). Further, Congress has never since amended this section to say otherwise.

Plaintiff alleges that "residential telephone subscribers" includes cellular telephones because the term refers to the identity of the "subscriber," and not the type of technology (*i.e.*, cellular versus landline phones).  It is unsurprising that Plaintiff has failed to cite any cases that so hold in this Circuit, because there are none.  In light of *Loper Bright* and *McLaughlin*, this Court must exercise its own judgment in interpreting the TCPA and must employ the typical tools of statutory construction that are available to it - starting with the plain language of the statute itself.

Given the ubiquity of cell phones today, including as substitutes for landlines, it is easy to forget that cell phones were still in their infancy in 1991, when the TCPA was enacted.  Today, according to the Pew Research Center, 98% of Americans, or approximately 336 million American individuals, own cell phones. *See* Pew Research Center, Mobile Fact Sheet (Nov. 20, 2025), https://www.pewresearch.org/internet/fact-sheet/mobile/; U.S Census Bureau, U.S. and World Population Clock, https://www.census.gov/popclock/.  However, in 1991, data from the Cellular Telecommunications Industry Association indicated there were only 2.3 million cellular telephone subscribers in total. *See* '91 A Record Year As Number of Cellular Phone Users Rose 43%, *Desert News*, Mar. 22, 1992, https://www.deseret.com/1992/3/22/18974405/91-

a-record-year-as-number-of-cellular-phone-users-rose-43/. Even if all of those cellular telephone subscribers were in the United States (which there is no reason to believe), this only represents about 1% of the U.S. population when the TCPA was enacted. *See* https://www.census.gov/data/tables/time-series/dec/popchange-data-text.html).

Plaintiff would have this Court ignore this historical backdrop, as well as the fact that Congress made a clear distinction in the TCPA's statutory language between cellular phone service and a residential telephone line. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* § 227(b)(1)(B) (separate provisions governing "cellular telephone service" and "residential telephone line"); *compare* 47 U.S.C. § 227(c) (addressing "residential telephone subscribers" and "residential subscribers") *with* 47 U.S.C. § 227 (b) (addressing "cellular telephone service"); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (recognizing that a cell phone number is different from a "residential telephone line" in Section 227(b)(1)(B)).

Plaintiff provides no supporting legislative history for his contention that the distinction in the plain language contained in these different sections should be ignored, and cannot refute that the legislative history confirms that Congress did not intend the "do not call" protections of the TCPA to extend to cellular telephones (as opposed to "residential telephones" - in other words, landlines). *See, e.g.*, Senate Report No. 102-178 (1991) at 1968 (confirming intention of TCPA's automated call provisions was "to protect the privacy interests of *residential telephone subscribers* by placing restrictions on unsolicited, automated telephone calls *to the home* . . . ." (emphasis added)); *Id.* at 1976 (characterizing telemarketers "who place telephone calls *to the home*" as "intruders" upon "one's privacy rights *in the home.*" (emphasis added)); *Id.* at 1975 (emphasizing that the TCPA was not intended to prevent

"telemarketers from placing automated calls *to business users.*" *Id*. at 1974. (emphasis added)). And, as one of the sponsors of the TCPA confirmed – in his own words – the TCPA was intended to address automated "robocalls" to "residential subscribers" because those calls were seen as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to *rip the telephone right out of the wall*." 137 Cong. Rec. 30821 (1991) (emphasis added).

If Congress intended to protect cellular telephones in Section 227(c), rather than conspicuously omitting them, it could have done so in 1991 – or it could have amended the provision as cell phone use has grown. Rather, Congress has chosen to extend the TCPA's "do not call" protections only to "*residential* telephone subscribers," meaning home, landline subscribers (emphasis added). As the term "residential" is used throughout the TCPA, it consistently refers to a subscriber that is *different and distinct* from a cellular telephone subscriber. And, as the discussion above illustrates, Plaintiff's reading of the TCPA inserts a concept, the "cell phone," that not only is not a part of the "do not call" provisions of the TCPA, but simply was not a part of an average American's life, much less their home, at the time the statute was enacted.

A review of the cases Plaintiff cites for the proposition that courts have supposedly continued to defer to the FCC's interpretation of the TCPA after *Loper Bright* reveals no binding authority on the issue of whether "residential subscriber" includes cell phone users. All of the cited cases are out of District, and many deal with text messages and whether they are "calls" within the meaning of the TCPA, or with other, unrelated provisions in the TCPA – not the issue or particular statutory provisions at issue in this case. *See*, *e.g.*, *Carter v. Health*

*Ins. King Agency, LLC*, No. 3:25-cv-00005, 2025 U.S. Dist. LEXIS 256118 (S.D. Iowa July 21, 2025 (denying motion to dismiss for lack of personal jurisdiction – without discussion of the issues raised in the present case); *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910, 2025 U.S. Dist. LEXIS 231053 (S.D. Fla. Nov. 25, 2025) (addressing the issue of whether a text message is a "call" under the TCPA – without discussion of the issues raised in the present case). Further, those out-of-District opinions conflict with the plain language of the statute, have not yet survived appellate review, and are not binding on this Court.  *See, e.g., Dilanyan v. Hugo Boss Fashions, Inc.,* 2:25-cv-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8-*9 (C.D. Cal. Dec. 3, 2025).

In addition, the courts that have rendered the decisions on which Plaintiff relies generally have not engaged with the legislative history and historical landscape that Congress faced in 1991 and have, instead, treated the question as if cellular telephones were in widespread use in 1991, which they simply were not. *See*, *e.g., Harriel v. Bealls*, Case No. 8:25-cv-1165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157, at *5-*6 (M.D. Fla. Aug. 15, 2025) (holding, in a case concerning text messages, rather than calls, to a cell phone, that the FCC's Rule interpretating the TCPA to include cell phones within the scope of its "do not call" protections (made 12 years post-enactment) "recognizes the plain reality that most people 'exclusively use cellphones in their residence and do not own landline phones.'" (citing *Jackson v. Direct Building Supplies LLC*, No. 4:23-cv-01569, 2024 U.S. Dist. LEXIS 881, at *7 (M.D. Pa. Jan. 17, 2024)); *see also Ryburn v. Centene Corp.,* No. 4:25-cv-00765, 2025 U.S. Dist. LEXIS 231926 (E.D. Ark. Nov. 19, 2025).  At least one has also expressly recognized that, after *Loper Bright*, the appellate courts may disagree about their acceptance of the FCC's interpretations of the TCPA, and have certified interlocutory appeals and stayed discovery to

allow such appellate review. *See, e.g.*, *Dilanyan,* 2:25-cv-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8-*9.[1]

The TCPA case on which Plaintiff relies most heavily, *Cacho v. McCarthy & Kelly LLP*, No. 1:23-cv-11157, 739 F. Supp. 3d 195 (S.D.N.Y. July 3, 2024), does not compel this Court to reach the result that Plaintiff desires. That decision came from outside this Circuit, dismissed the plaintiff's complaint based upon a pleading deficiency, and was not tested by appellate review because the plaintiff in the case never filed an amended pleading. *See* No. 1:23-cv-11157, ECF. 22. More importantly, the district court's decision in that case appears to have been driven (at least in the first instance) by that court's improper concern with the "sweeping 'practical consequences'" if cellular telephones were no longer considered subject to the TCPA's "do not call" protections. *See* 739 F. Supp. 3d at 203-04. Courts are, of course, not permitted to make legislation, even if they think that new law would be more prudent than what Congress enacted. And the Court did not engage with the legislative history set forth above and, concluded that Congress intended to include cellular telephone users within the ambit of "residential subscribers" in 1991 even though (a) the language of the statute itself strongly suggests otherwise, (b) cellular telephone use was still in its infancy, and (c) the FCC did not interpret the TCPA otherwise until 12 years later. *See id.* at 206-208. Even so, the District Court in *Cacho* added the caveat that "users of cellphones are not categorically excluded from the definition of "residential subscriber" under the TCPA - thereby recognizing that mixed-use users like Plaintiff may still be. *See id.* at 204.

---

[1] And, of course, the cases that have adhered to the FCC's interpretation of the TCPA in the wake of *Loper Bright* and *McLaughlin* have recognized that, under that interpretation, not all cellular telephone users qualify as "residential subscribers" and that determining the users that do qualify versus those who do not requires an individual, fact-intensive inquiry that predominates and precludes class certification. This issue is addressed in Ox's pending motion to strike class allegations and/or deny class certification. (ECF 32, 33).

In sum, the FCC's 2003 Order is only an interpretation of the TCPA's terms. After *Loper Bright* and *McLaughlin*, the Court must decide for itself whether the agency was acting within its authority to stretch beyond the plain language of the TCPA to include cellular telephones in the do-not-call restrictions. The Court should find it was not, and leave it to Congress to expand the scope of the TCPA if it now believes such expansion is necessary.

## II. PLAINTIFF HAS PLEADED NO FACTS TO INDICATE THAT DEFENDANT'S ALLEGED ACTIONS WERE WILLFUL OR KNOWING

Plaintiff concedes that in response to the alleged calls, he "informed the caller they were calling a personal number," and that he "was not interested." ECF 30 at 11. His complaint does not plead any facts that show he informed the caller that he was on the NDNCR. As such, he has not sufficiently pleaded facts that can sustain a claim for treble damages, and the Court should dismiss that claim. *See Koeller v. Seemplicity Security, Inc.*, No. 4:24-cv-00528-SRC, 2024 WL 4751306 (E.D. Mo. Nov. 12, 2024).

## CONCLUSION

For the reasons set forth above, and for the reasons stated in Ox's Amended Motion, the Court should grant Defendant's motion to dismiss.

DATED: January 9, 2026

BRYAN CAVE LEIGHTON PAISNER LLP

By: ___/s/Darci F. Madden_____
    Darci F. Madden, Esq.
    Martha Kohlstrand, Esq
Attorneys for Defendant
*OX APPSEC SECURITY INC.*
One Metropolitan Square
211 North Broadway, Suite 3600

St. Louis, MO 63102
(314) 259-2000
darci.madden@bclplaw.com
martha.kohlstrand@bclplaw.com

- 9 -